UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O1 COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MCI COMMUNICATIONS SERVICES, INC. and VERIZON SELECT SERVICES INC., <br><br> Defendants. | No. 2:18-cv-01950-JAM-DB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY COUNT I AND TO DISMISS COUNTS II and III** |

This matter involves a billing dispute between two telecommunications companies. O1 Communications, Inc. ("Plaintiff" or "O1") sued MCI Communications Services, Inc. and Verizon Select Services, Inc. (collectively, "Defendants" or "Verizon"), alleging Verizon improperly withheld, and continues to withhold, payments for switched access services that O1 provided to Verizon. First Amended Compl. ("FAC"), ECF No. 7. Verizon moves to stay O1's breach of contract claim, and to dismiss O1's claims for violations of the federal Communications

Act and California's unfair competition law. Mot., ECF No. 14-1.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.[1]

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

O1 is a competitive local exchange carrier ("CLEC") based in El Dorado Hills, California. FAC ¶ 6. O1 provides Verizon with switched access services, routing and connecting long-distance calls for Verizon customers. FAC ¶¶ 2, 6-8. Interexchange carriers, like Verizon, pay originating access charges to CLECs for connecting customers who initiate long-distance calls within a CLEC's local calling area and terminating access charges to CLECs for connecting customers who receive long-distance calls within a CLEC's local calling area. See FAC ¶¶ 2, 12. O1 also provides database queries that enable toll free calls to be directed to the correct destination. FAC ¶ 12.

The federal inter-carrier tariff compensation scheme permits CLECs to charge different amounts for switched access services in part based on the functionality of the services provided. FAC ¶ 13. O1 and Verizon disagreed on the functionality provided by O1, and thus could not agree on the appropriate compensation based on federal and California state tariffs. FAC ¶ 2. To settle this dispute, in February 2015, O1 and Verizon entered

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 8, 2019. The parties should also take notice that this is the only footnote in this Order. The Court finds that 71 footnotes by Verizon and 10 footnotes by O1 is very distracting. The parties are strongly encouraged to avoid such excessive and unnecessary use of footnotes in the future.

into an agreement (the "Settlement Agreement") which, among other things, provides flat per-minute rates for the access charges to be billed by O1 as a substitute for the otherwise applicable, but disputed, tariffed rates. FAC ¶¶ 13-14, 18-20; Settlement Agreement, ECF No. 14-2, at 2-3. The Settlement Agreement is governed by New York law. Settlement Agreement ¶ 12.

Beginning with the January 1, 2015 invoice, O1 billed Verizon the rates agreed to by Verizon in the Settlement Agreement, and, until February 5, 2016, Verizon fully paid the invoices. FAC ¶¶ 22-23. Verizon subsequently ceased payments and disputed O1's invoices from January 2015 through May 2016, asserting O1 failed to provide full end-office switched access functionality and that much of the traffic transmitted by O1 consisted of fraudulent, "spoofed" calls. FAC ¶¶ 23, 27-28. O1 denied Verizon's allegations and the parties exchanged letters in 2016 and 2017 regarding the disputed payments. See Exhibits 2-4, ECF No. 7-1, at 3-10. Despite Verizon's failure to pay under the terms of the Settlement Agreement, O1 has, as required by law, continued to provide Verizon and its customers with switched access services. FAC ¶¶ 30-34.

Moreover, O1 alleges "[u]pon information and belief, Verizon also may have colluded with AT&T in an effort to drive O1 from the market by cutting off O1's revenues." FAC ¶ 67. Specifically, O1 contends, "[u]pon information and belief, on or about March 2016, Verizon personnel communicated with AT&T Corp. personnel about AT&T Corp.'s allegations that most, if not all, of the toll free traffic transmitted by O1 to AT&T was 'spoofed' and that because of the alleged 'spoofing,' AT&T was withholding

3

100% of O1's invoiced amounts." FAC ¶ 25. O1 further alleges that Verizon began to withhold payments to O1 after, and as a consequence of, those communications with AT&T. FAC ¶ 27.

On July 14, 2018, O1 filed this suit to recover contractual payments allegedly owed by Verizon. Compl., ECF No. 1. In its First Amended Complaint, O1 brings causes of action for breach of contract, violation of the federal Communications Act (47 U.S.C. § 201), and violation of California's unfair competition law (Cal. Bus. & Prof. Code § 17200). FAC at 10-15.

Verizon moves to stay O1's breach of contract claim under the primary jurisdiction doctrine, and to dismiss O1's claims for violations of the federal Communications Act and California's unfair competition law for failure to state a claim or, in the alternative, to also stay these claims. Mot., ECF No. 14-1. O1 opposes the motion. Opp'n, ECF No. 24.

## II. OPINION

### A. Breach of Contract Claim

Verizon argues this Court should stay O1's breach of contract claim, under the primary jurisdiction doctrine, pending the FCC's resolution of whether the VoIP Symmetry Rule applies to LECs that partner with over-the-top VoIP providers. Mot. at 6. As is relevant here, the FCC plans to determine whether an LEC partnered with an over-the-top VoIP provider, which provides call routing over a broadband Internet connection, performs the functional equivalent of end-office switching and can thus charge the higher tariffed rates due for that service. Id. at 3-4, 6.

"The [primary jurisdiction] doctrine is a 'prudential' one,

under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). The Ninth Circuit has applied the primary jurisdiction doctrine when there is a "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Clark, 523 F.3d at 1115 (quoting Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002)).

Verizon contends O1 exclusively partners with over-the-top VoIP providers and so the FCC's interpretation of the VoIP Symmetry Rule, which would impact the appropriate tariffed rate, is directly raised in the contractual dispute with O1. Mot. at 3, 8. And while the interpretation of the VoIP Symmetry Rule is indeed pending before the FCC (see AT&T Corp. v. FCC, 841 F.3d 1047, 1049 (D.C. Cir. 2016) (vacating In the Matter of Connect Am. Fund, 30 F.C.C. Rcd. 1587 (2015))), Verizon's argument fails. The primary jurisdiction doctrine does not apply here because O1's breach of contract claim does not implicate the FCC's interpretation of the VoIP Symmetry Rule. Rather, the breach of contract claim can be properly adjudicated based on the plain language of the Settlement Agreement.

The Settlement Agreement provides, with respect to different

services, that O1 "shall bill Verizon" "at a rate not to exceed" a certain dollar amount per minute of use. Settlement Agreement ¶¶ 2(a)-(e). The contract makes no mention of O1's tariffed rates, and the contractual rates provided are owed to O1 irrespective of such tariffed rates. Id. Notwithstanding, Verizon argues the contractual language of "at a rate not to exceed" acts as a cap to O1's tariffed rates, drawing the VoIP Symmetry Rule into the contract. Reply, ECF No. 29, at 2. But reading into the contract an implicit reference to O1's tariffed rates would contradict the unambiguous, plain language of the Settlement Agreement. See Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (N.Y. 2007). The express language of the Settlement Agreement is clear, and the flat-rate payment provisions do not implicate O1's tariffed rates and are therefore not contingent on the FCC's interpretation of the VoIP Symmetry Rule.

In further support of its request to stay the proceedings, Verizon cites recent decisions from the District of Colorado (Teliax, Inc. v. AT&T Corp., No. 15-cv-01472-RBJ, 2017 WL 3839459 (D. Colo. Sept. 1, 2017)) and Northern District of Illinois (Peerless Network, Inc. v. MCI Commc'ns Servs., Inc., No. 14 C 7417, 2018 WL 1378347 (N.D. Ill. Mar. 16, 2018)) which stayed similar payment disputes under the primary jurisdiction doctrine pending the FCC's resolution of the VoIP Symmetry Rule. Mot. at 6-7. Verizon also points to O1's own request to stay proceedings for the same reason in a case against AT&T. Mot. at 7 (citing O1 v. AT&T, No. 3:16-cv-01452 (N.D. Cal. Sept. 17, 2018), ECF No. 129). But this argument is misplaced. Each of these three other cases specifically involved disputes about tariffed rates, which

incorporate the VoIP Symmetry Rule, and not contractual agreements where payments are not contingent on tariffed rates.

Thus, this Court declines to stay O1's breach of contract claim.

B. <u>Violation of Communications Act Section 201</u>

Section 201 of the federal Communications Act provides that "[a]ll charges, practices, classifications, and regulations for and in connection with such communications service, shall be just and reasonable and any such charge, practice, classification, or regulation that is unjust and unreasonable is hereby declared unlawful." 47 U.S.C. § 201(b).

O1 alleges that Verizon's "self-help" of withholding contractual payments due to O1 and Verizon's "self-declared refund of previously made payments to O1" is unreasonable and violates Section 201 of the Communications Act. FAC ¶¶ 51-55. O1 relies on a Fifth Circuit decision affirming a judgment against a customer-carrier under Section 201 for the customer-carrier's reduction of amounts paid to an LEC on undisputed invoice charges based on its estimate of previous "overpayments" on certain disputed charges. <u>CenturyTel of Chatham, LLC v. Sprint Commc'ns Co., L.P.</u>, 861 F.3d 566, 577-578 (5th Cir. 2017). This Court does not find <u>CenturyTel</u> persuasive.

Verizon contends the FCC's recent interpretation of Section 201 is instructive. Mot. at 10-11 (discussing Memorandum Opinion & Order, <u>All Am. Tel. Co. v. AT&T Corp.</u>, 26 FCC Rcd. 723 (2011) ("<u>All American Order</u>")). This Court agrees. In the <u>All American Order</u>, the Commission noted that it has "repeatedly held that an allegation by a carrier that a customer has failed to pay charges

specified in the carrier's tariff fails to state a claim for violation of any provision of the Act, including sections 201(b) and 203(c)—even if the carrier's customer is another carrier. These holdings stem from the fact that the [Communications] Act generally governs a carrier's obligations to its customers, and not vice versa." All American Order, 26 FCC Rcd., at 727. The Commission therefore held that, "although a customer-carrier's failure to pay another carrier's tariffed charges may give rise to a claim in court for breach of tariff/contract, it does not give rise to a claim . . . for breach of the Act itself." Id. And although the case at hand involves a claim brought under Section 201 for failure to pay charges under a contract, rather than a tariff, that difference does not change the result.

O1 alleges that since March 2016 Verizon has entirely withheld payments due for switched access services provided by O1. FAC ¶ 35. But a claim against Verizon, in its role as a *customer*, for withholding such payments is not actionable under Section 201 of the Communications Act. O1's cause of action for violation of Section 201 of the Communications Act is therefore dismissed with prejudice.

    C.    <u>Violation of California's Unfair Competition Law</u>

California's unfair competition law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The California Supreme Court, guided by federal antitrust law, held a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable

to a violation of the law, or that otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (Cal. 1999). Moreover, "any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Cel-Tech, 20 Cal. 4th, at 186-87.

O1 alleges Verizon is engaging in an unfair business practice by knowingly taking advantage of O1's legal obligation to continue providing switched access service to Verizon while Verizon refuses to pay for those services based on unsubstantiated allegations, in collusion with AT&T and in effort to deprive O1 of cash flows. FAC ¶¶ 56-75; Opp'n at 13-15. O1 thus argues the predicate unfair conduct goes beyond a mere breach of contract—which alone cannot sustain a UCL claim—because Verizon has colluded with AT&T in withholding the payments to harm O1, a competitor. Opp'n at 14-15. O1 appears, in its opposition, to "tether" its UCL claim to a violation of California Business and Professions Code Section 17048. Id.

As currently pleaded, O1's UCL cause of action must be dismissed. The Supreme Court's reasoning in Twombly, which also involved allegedly collusive practices of telecommunications companies, is illustrative. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In Twombly, citing the defendants' "parallel course of conduct," the plaintiffs alleged "upon information and belief" that the defendants had "entered into a contract, combination or conspiracy" in violation of antitrust law. Twombly, 550 U.S., at 551. The Supreme Court held that the plaintiffs had "not nudged

their claims across the line from conceivable to plausible," and accordingly, "their complaint must be dismissed." Id. at 547. The Supreme Court explained the defendants' "parallel conduct, even conduct consciously undertaken" was insufficient to state a claim for an antitrust violation because such conduct was "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." Id. at 554, 556.

Here, O1 alleges "upon information and belief" that, in deciding not to pay for the switched access services, Verizon communicated with AT&T about AT&T's rationale for refusing to pay O1, that Verizon adopted AT&T's rationale, and, thus, that Verizon "may" be "collu[ding] with AT&T in an effort to drive O1 from the market by cutting off O1's revenues." FAC ¶¶ 25, 27, 67, 69. But O1's allegation of collusion, upon which its UCL claim rests, is conclusory and insufficient to support the claim. Verizon's parallel conduct could simply be the rational reaction of a business actor to publicly-made allegations against a counterparty. Reply at 5 (citing Twombly, 550 U.S., at 557). Nevertheless, this Court grants Plaintiff leave to amend its complaint with respect to the UCL claim. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Separately, O1's request for relief for the UCL violation is not fatal to its claim. In the FAC, O1 requested treble damages

for the alleged UCL violation. FAC ¶ 80. But plaintiffs may only seek injunctive relief and restitution, not damages, under a UCL claim. Cel-Tech, 20 Cal. 4th, at 179. Restitution is improper here because Verizon has not *taken* any money from O1 through an unfair business practice, rather Verizon has not paid money allegedly owed. See Kraus v. Trinity Mgmt. Servs., Inc., 23 Cal. 4th 116, 126–127 (Cal. 2000). And while O1 did not specifically request an injunction in the FAC, under the Federal Rules of Civil Procedure every final judgment, other than a default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Verizon was on notice of O1's claims, and would not be prejudiced by injunctive relief barring unfair business practices. See Seven Words LLC v. Network Sols., 260 F.3d 1089, 1098 (9th Cir. 2001).

Thus, the Court grants Verizon's motion to dismiss O1's UCL claim without prejudice.

### III. ORDER

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion (ECF No. 14-1) as follows:

1. DENIES Defendants' motion to stay Plaintiff's breach of contract claim (Count I);

2. GRANTS WITH PREJUDICE Defendants' motion to dismiss Plaintiff's cause of action for violation of Section 201 of the Communications Act (Count II); and

3. GRANTS WITHOUT PREJUDICE Defendants' motion to dismiss Plaintiff's UCL claim (Count III).

If Plaintiff elects to amend its complaint with respect to the UCL claim, Plaintiff shall file a Second Amended Complaint within twenty days of this Order. Defendants' responsive pleading is due twenty days thereafter.

IT IS SO ORDERED.

Dated: January 18, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE